IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:16-CV-288-FL

| | |
|---|---|
| KIMARLO ANTONIO RAGLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| NORTH CAROLINA STATE BOARD OF | ) |
| EDUCATION; WILLIAM COBEY, A.L. | ) |
| COLLINS, DAN FOREST, REBECCA | ) |
| TAYLOR, REGINALD KENAN, OLIVIA | ) |
| HOLMES OXENDINE, GREGORY ALCORN, | ) |
| WAYNE MCDEVITT, PATRICIA | ) |
| WILLOUGHBY, and ERIC DAVIS, members | ) |
| of the North Carolina State Board of | ) |
| Education, individually and in their official | ) |
| capacities; DALE FOLWELL and AMY | ) |
| WHITE, members of the North Carolina State | ) |
| Board of Education in their official capacities; | ) |
| MARK JOHNSON, Superintendent of North | ) |
| Carolina Department of Public Instruction, in | ) |
| his official capacity; JANET COWELL and | ) |
| KEVIN HOWELL, former members of the | ) |
| North Carolina State Board of Education, | ) |
| individually; and JUNE ATKINSON, former | ) |
| Superintendent of North Carolina Department | ) |
| of Public Instruction, individually,[1] | ) |
| | ) |
| Defendants. | ) |

ORDER and
MEMORANDUM &
RECOMMENDATION

---

[1] Plaintiff has named as defendants certain members of the North Carolina State Board of Education and the Superintendent of North Carolina's Department of Public Instruction in both their individual and official capacities. Since the filing of this action, defendants Janet Cowell, Kevin Howell, and June Atkinson have ceased holding their prior positions. Pursuant to Fed. R. Civ. P. 25(d), their successors are automatically substituted as parties with regard to Plaintiff's official capacity claims. As Plaintiff has also asserted individual capacity claims against Defendants Cowell, Howell, and Atkinson, they remain defendants as to those claims.

This pro se case is before the court on the application [DE #1] by Plaintiff Kimarlo Ragland to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(1) and for frivolity review pursuant to 28 U.S.C. § 1915(e)(2)(B), the matter having been referred to the undersigned by the Honorable Louise W. Flanagan, United States District Judge.

<u>IFP MOTION</u>

The standard for determining *in forma pauperis* status is whether "one cannot because of his poverty pay or give security for the costs . . . and still be able to provide himself and dependents with the necessities of life." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339 (1948) (internal quotation marks omitted). Based on the information contained in Plaintiff's affidavit, the court finds that Plaintiff has demonstrated appropriate evidence of inability to pay the required court costs. Thus, Plaintiff's application to proceed *in forma pauperis* is allowed.

<u>DISCUSSION</u>

I.     Background

Plaintiff sues Defendants for actions taken in connection with his termination as a public school teacher from Nash-Rocky Mount Public Schools and for alleged adverse actions taken against Plaintiff's teaching license by the North Carolina State Board of Education.

After a hearing in January 2015, Nash-Rocky Mount Public Schools terminated Plaintiff's employment for incidents that occurred in October 2014. Plaintiff filed for judicial review in North Carolina Superior Court, and Plaintiff's termination was affirmed by the state superior court and by the North Carolina Court

of Appeals. Both the North Carolina Supreme Court and the United States Supreme Court have denied review. *Ragland v. Nash-Rocky Mount Bd. of Educ.*, No. COA15-862, 787 S.E.2d 422, 422-26, 433 (N.C. Ct. App. 2016), *appeal dismissed and discretionary rev. denied*, No. 251P16, 793 S.E.2d 237, 238 (N.C. 2016) (mem.), *cert. denied*, No. 16-7100, 137 S. Ct. 1081 (2017) (mem.).

The North Carolina Court of Appeals summarized the incidents that led to Plaintiff's termination from Nash-Rocky Mount Schools as follows:

> [D]uring a situation with an out-of-control student, [Plaintiff] removed his shirt and prepared for a physical confrontation. Instead of calling a school administrator, the school resource officer, or other assistance, [Plaintiff] became agitated, stripped to his bare torso, and "prepared for combat." Meanwhile, another teacher . . . placed herself between the door and the violent student, trying to calm him down, while also entreating [Plaintiff] to please call "downstairs" for assistance. Ultimately, another student contacted the main office and summoned help.
>
> . . . .
>
> Following the incident with the violent student and [Plaintiff's] removal of his shirt in the classroom on 17 October 2014, the following Monday, [Plaintiff] approached a female student S.B., stroked her hair, and told her that he had been thinking about her over the weekend. [Plaintiff] also asked S.B., "[y]ou didn't want to see my muscles?" When questioned by Principal Williams, [Plaintiff] never denied this conduct but instead claimed he was being "friendly" towards S.B.

*Ragland*, 787 S.E.2d at 431-32 (eighth alteration in original).

Although difficult to parse, the undersigned liberally construes Plaintiff's complaint to allege the following causes of action: (1) violation of Plaintiff's constitutional rights pursuant to 42 U.S.C. § 1983 and conspiracy to violate those rights pursuant to 42 U.S.C. § 1985; (2) breach of employment contract because of

Plaintiff's race in violation of 42 U.S.C. § 1981; (3) racial discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964; and (5) various torts, including negligence, libel, fraud, and intentional infliction of emotion distress, over which the court may have supplemental jurisdiction pursuant to 28 U.S.C. § 1367.[2]

The gist of Plaintiff's complaint is that he was terminated from his employment as a public school teacher and the North Carolina State Board of Education took adverse action against his teaching license all because of his race.[3] Plaintiff purports to assert claims against the named defendants in both their official and individual capacities and requests relief in the form of monetary damages, possible reinstatement of his teaching license, destruction of documents in his file relating to the basis for his termination and license revocation, and reimbursement of litigation costs.

---

[2] Plaintiff also purports to sue defendants under federal statutes which are either non-existent or are wholly inapplicable to this matter: 18 U.S.C. § 1513 (criminal statute addressing the killing or threatening of a witness); 18 U.S.C. § 1535 (statute does not exist); 19 U.S.C. § 1592 (penalties for fraud in the context of customs duties); 28 U.S.C. § 2680 (procedural provision of federal tort statute); 42 U.S.C. § 12203 (prohibiting retaliation in the context of disability law); 47 U.S.C. § 230 (internet regulation); and 49 U.S.C. §§ 46302, 46507 (penalties for false information and threats in the context of air commerce). As there is no legal basis for such claims, it is recommended that Plaintiff's claims pursuant to these statutes be dismissed as frivolous.

[3] A public search of the North Carolina Department of Public Instruction's Online License Verification database indicates that Plaintiff's license was not revoked but rather expired at the end of June 2016. *See* https://vo.licensure.ncpublicschools.gov/datamart/loginNCDPI.do (last visited May 3, 2017).

## II.    Standard for Frivolity Review

Notwithstanding the determination that Plaintiff is entitled to *in forma pauperis* status, the court is required to dismiss all or part of an action found to be frivolous or malicious, which fails to state a claim on which relief can be granted, or which seeks money damages from a defendant immune from such recovery. 28 U.S.C. § 1915(e)(2); *Michau v. Charleston County*, 434 F.3d 725, 728 (4th Cir. 2006). A case is frivolous if it lacks an arguable basis in either law or fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Pro se complaints are entitled to a more liberal treatment than pleadings drafted by lawyers. *See White v. White*, 886 F.2d 721, 722–23 (4th Cir. 1989). However, the court is not required to accept a pro se plaintiff's contentions as true. *Denton v. Hernandez*, 504 U.S. 25, 32 (1992). The court is permitted to "pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." *Neitzke*, 490 U.S. at 327.

Rule 8 of the Federal Rules of Civil Procedure requires a complaint to give a "short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8. The statement must give a defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "A plaintiff must offer more detail . . . than the bald statement that he has a valid claim of some type against the defendant." *Trulock v. Freeh*, 275 F.3d 391, 405 (4th Cir. 2001); *see also White*, 886 F.2d at 723 (affirming district court's dismissal of plaintiff's suit as frivolous where plaintiff's complaint "failed to contain any factual allegations tending to support his bare assertion"). While the court must read the

complaint carefully to determine if the plaintiff has alleged facts sufficient to support his claims, *White*, 886 F.2d at 724, the court is not required to act as the pro se plaintiff's advocate or to parse through volumes of documents or discursive arguments in an attempt to discern the plaintiff's unexpressed intent, *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013).

## III.    Official Capacity Claims

### A.    Money Damages Claims

Plaintiff sues the North Carolina State Board of Education, its members, and former Superintendent Atkinson under 42 U.S.C. §§ 1981, 1983, and 1985, and under Title VII of the Civil Rights Act for money damages. (Rev. Compl. at 11.) The court lacks jurisdiction over the §§ 1981, 1983, and 1985 claims because of Eleventh Amendment immunity, and Plaintiff's Title VII claim is frivolous or fails to state a claim for which relief may be granted.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. "Under the Eleventh Amendment, . . . neither a State nor its officials in their official capacity may be sued for damages in federal court without their consent." *Gamache v. Cavanaugh*, 82 F.3d 410, 1996 WL 174623, at *1 (4th Cir. 1996) (unpublished table decision). Moreover, "state agencies are protected from suit by citizens of a state by the doctrine of sovereign immunity." *Teague v. N.C. Dep't of Transp.*, No. 5:07-CV-

45-F, 2007 WL 2898707, at *2 (E.D.N.C. Sept. 28, 2007) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 (1984)). There is, however, a limited exception to this immunity for certain types of injunctive relief pursuant to *Ex Parte Young* (discussed below in subsection B).

"Like the state itself, state officers acting in their official capacity are also entitled to Eleventh Amendment protection, because 'a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office,' and '[a]s such, it is no different from a suit against the State itself.'" *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) (alteration in original) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

In *Quern v. Jordan*, 440 U.S. 332 (1979), the Court held that § 1983 did not abrogate a state's Eleventh Amendment immunity. *Id.* at 337-45 (reaching this conclusion by analyzing the plain language and legislative history of § 1983). Lower courts have similarly held that § 1981 and § 1985 do not abrogate Eleventh Amendment immunity. *Parks v. Piedmont Tech. Coll.*, 76 F.3d 374, 1996 WL 36897, at *1 (4th Cir. 1996) (unpublished table decision) (state immune from money damages under § 1981); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1138 (4th Cir. 1990) (state immune from money damages under § 1981); *Demuren v. Old Dominion Univ.*, 33 F. Supp. 2d 469, 474 (E.D. Va. 1999) (state immune from money damages under § 1981), *aff'd*, 188 F.3d 501 (4th Cir. 1995) (unpublished table decision); *Kirby v. N.C. State Univ.*, No. 5:13-CV-850-FL, 2015 WL 1036946, at *4 (E.D.N.C. Mar. 10, 2015) (state immune from money damages under § 1985), *aff'd*,

615 F. App'x 136 (4th Cir. 2015) (mem.), *cert. denied*, No. 15-8399, 137 S. Ct. 34 (2016) (mem.); *Clark v. Md. Dep't of Pub. Safety and Correctional Servs.*, 247 F. Supp. 2d 773, 776 n.2 (D. Md. 2003) (state immune from money damages under § 1985).

The North Carolina State Board of Education is an entity of the State of North Carolina and is, therefore, entitled to the protections afforded by the Eleventh Amendment and the doctrine of sovereign immunity. *See H.B. v. State Bd. of Educ.*, No. 4:14-CV-204-BO, 2015 WL 2193778, at *3 (E.D.N.C. May 11, 2015); *see also Dyer v. Md. State Bd. of Educ.*, No. 16-1862, --- F. App'x ----, 2017 WL 1423298, at * 1 (4th Cir. April 21, 2017) (holding that the Eleventh Amendment bars § 1983 money damages action against the Maryland State Board of Education and its members in their official capacities).

Plaintiff includes no allegations from which it may be inferred that the State of North Carolina has waived its immunity with respect to the § 1981, § 1983, and § 1985 damages Plaintiff claims, nor does Plaintiff invoke a federal statute that abrogates North Carolina's sovereign immunity as to these claims. Accordingly, Plaintiff's claims against the North Carolina State Board of Education should be dismissed for lack of subject matter jurisdiction. Similarly, to the extent Plaintiff seeks money damages from the individual defendants in their official capacities, they are immune from such liability under the Eleventh Amendment. *See Gray*, 51 F.3d at 430.

States and their officials do not enjoy Eleventh Amendment immunity, however, for claims brought pursuant to Title VII of the Civil Rights Act of 1964.

*Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976). Therefore, Defendants are not entitled to Eleventh Amendment immunity with respect to Plaintiff's Title VII claim.

Nevertheless, Plaintiff's Title VII claim should be dismissed as frivolous or for failure to state a claim. Title VII, as pertinent here, prohibits racial discrimination in employment. *See* 42 U.S.C. § 2000e-2. In North Carolina, only local Boards of Education employ teachers such as Plaintiff. N.C. GEN. STAT. § 115C-325.3(b). Because Plaintiff was not employed by the North Carolina State Board of Education, its board members or its Superintendent, his Title VII claim against them should be dismissed as frivolous or for failure to state a claim.[4]

### B. Injunctive Relief

Part of the relief Plaintiff seeks is that Defendants (i) effectively expunge his file relating to the State Board's license revocation proceedings; and (ii) "reinstate [his] teaching license (if necessary)." (Rev. Compl. at 11.) This is a request for injunctive relief against the State and its officials based on the allegation that the State Board violated Plaintiff's right to equal protection.

Such injunctive relief, sought by way of § 1983, is potentially available pursuant to the *Ex Parte Young* exception to Eleventh Amendment immunity. This exception "allows private citizens, in proper cases, to petition a federal court to enjoin State officials in their official capacities from engaging in future conduct that would violate the Constitution or a federal statute." *Antrican v. Odom*, 290 F.3d 178, 184

---

[4] The lack of an employment relationship with Defendants appears to be the basis for the Equal Employment Opportunity Commission's dismissal [DE #1-2] of Plaintiff's complaint against Defendant Atkinson and the North Carolina Department of Public Instruction.

(4th Cir. 2002) (citing *Ex Parte Young*, 209 U.S. 123, 159 (1908), and *Green v. Mansour*, 474 U.S. 64, 68 (1985)).

To invoke the *Ex Parte Young* exception to Eleventh Amendment immunity, two conditions must be met: (1) the injunctive relief sought is prospective, *Milliken v. Bradley*, 433 U.S. 267, 289 (1977); and (2) the constitutional violation complained of is ongoing, *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 281 (1997). *See Antrican*, 290 F.3d at 185-87 (4th. Cir. 2002) (discussing the two conditions necessary to invoke *Ex Parte Young*); *Republic of Paraguay v. Allen*, 134 F.3d 622, 627 (4th Cir. 1998).

Fourth Circuit precedent informs that the injunctive relief sought by Plaintiff satisfies the *Ex Parte Young* criteria and therefore renders the claim for injunctive relief non-frivolous. In *Coakley v. Welch*, 877 F.2d 304 (4th Cir. 1989), the Fourth Circuit permitted a plaintiff seeking reinstatement to his previous state employment to proceed with his request for injunctive relief against the State of South Carolina. *Id.* at 306-07. The Fourth Circuit grappled with the contention that, because of the plaintiff's termination of employment, there was no alleged "ongoing" violation of federal law. *Id.* at 307 n.2. The Fourth Circuit rejected this view, however, and credited the view that the plaintiff had alleged state conduct that, "while no longer giving him daily attention, continues to harm him by preventing him from obtaining the benefits of [state] employment." *Id.* (citing *Elliott v. Hinds*, 786 F.2d 298, 302 (7th Cir. 1986) ("The injunctive relief requested here, reinstatement and expungement of personnel records, is clearly prospective . . . .")); *see also Shepard v. Irving*, 77 F. App'x 615, 620 (4th Cir. 2003) (unpublished) (holding that a plaintiff's request for

expungement of her academic record and related plagiarism conviction would be prospective and targeted an ongoing injury) (citing *Elliott* and *Wolfel v. Morris*, 972 F.2d 712, 719 (6th Cir. 1992) (categorizing as prospective relief a district court's award of injunctive relief directing prison officials to expunge defendant-inmates' disciplinary records)). *But see Paraguay*, 134 F.3d at 628 (characterizing as "quintessentially retrospective" an attempt to vacate a final state criminal conviction via § 1983 injunctive relief); *Jemsek v. N.C. Med. Bd.*, No. 5:16-CV-59-D, 2017 WL 696721, at *6 (E.D.N.C. Feb. 21, 2017) (holding that a doctor's request for injunctive relief directing a state medical board to retract a disciplinary order did not meet the *Ex Parte Young* criteria), *appeal docketed*, No. 17-1307 (4th Cir. Mar. 10, 2017).

Plaintiff requests that Defendants expunge his file of all information relating to the license revocation proceedings. (Rev. Compl. at 11.) This relief is analogous to the relief sought in *Coakley*, *Shepard*, *Elliott*, and *Hinds*. Thus, Plaintiff can potentially avail himself of the limited exception to immunity authorized by *Ex Parte Young*, and the Eleventh Amendment does not, therefore, operate to bar Plaintiff's claim for injunctive relief regarding expungement of his file with the North Carolina State Board of Education. The undersigned expresses no opinion as to the veracity of Plaintiff's allegations supporting this claim. The undersigned recommends, however, that this claim for injunctive relief be allowed to proceed.

Plaintiff's request for injunctive relief regarding reinstatement of his teaching license is, by his own account, speculative. (Rev. Compl. at 11.) It is unclear what the

status of Plaintiff's teaching license is, *see* note 3, *supra*, and the undersigned, therefore, recommends that the parties be given an opportunity to clarify this issue.

## IV. Individual Capacity Claims

Plaintiff also sues certain defendants in their individual capacities. However, these defendants are entitled to absolute quasi-judicial immunity with respect to their actions taken as members of the North Carolina State Board of Education and as Superintendent of the North Carolina Department of Public Instruction.

### A. Board Members

The Fourth Circuit has noted that "the special functions of some governmental officials require that they be exempted completely from [damages] liability." *Ostrzenski v. Seigel*, 177 F.3d 245, 249 (4th Cir. 1999) (citing *Butz v. Economou*, 438 U.S. 478, 508 (1978)). These officials include "'quasi-judicial' agency officials whose duties are comparable to those of judges or prosecutors when adequate procedural safeguards exist." *Id.* (citing *Butz*, 438 U.S. at 511-17). "Federal courts have extended quasi-judicial immunity to a wide range of administrative officials performing essentially adjudicative functions." *Dyer v. Md. State Bd. of Educ.*, 187 F. Supp. 3d 599, 612 (D. Md. 2016) (surveying cases), *aff'd*, No. 16-1862, --- F. App'x ----, 2017 WL 1423298 (4th Cir. April 21, 2017) (per curiam) (unpublished).

To determine whether an official is entitled to absolute quasi-judicial immunity, courts consider the following: (1) whether "the official's functions are similar to those of a judge, in that the official determines the law and the facts of the case"; (2) whether "the official makes decisions sufficiently controversial that they are

likely to foster suits for damages by disappointed parties"; and (3) whether "sufficient procedural safeguards are in place to protect against constitutional deprivations." *Richter v. Connor*, 21 F.3d 423, 1994 WL 118011, at *3 (4th Cir. 1994) (unpublished table decision).

The Fourth Circuit recently applied these criteria to members of a state board of education and afforded said members absolute quasi-judicial immunity. *Dyer*, 2017 WL 1423298, at *1. The court explained:

> For the claims against the [Maryland] State Board [of Education] members in their individual capacities, absolute, quasijudicial immunity applies because the State Board performs essentially judicial functions; a strong need exists to ensure that the State Board members can remove County Board members for misconduct without undue harassment from suit; and Maryland law adequately safeguards individuals subject to removal proceedings.

*Id.* (citing *Ostrzenski* and *Butz*).

Most relevant to the instant matter, the district court in *Dyer* found that members of the Maryland State Board of Education were entitled to quasi-judicial immunity for actions taken during the removal process of a local Board of Education member. *Dyer*, 187 F. Supp. 3d at 611. The court applied the three factors listed above and determined that the board members "performed precisely the type of function that courts have deemed sufficiently judicial so as to warrant the extension of absolute immunity." *Id.* at 612. The court found that (1) members of the state board conducted work comparable to that of an Administrative Law Judge or United State Magistrate Judge in that they "tackled justiciability issues, interpreted statutory language and case law, and applied the law as they understood it to the facts that

[the state administrative law judge] had found"; and (2) the removal process afforded "extensive procedural protections" to the extent it was governed by Maryland's Administrative Procedure Act and related administrative rules of procedure and provided the plaintiff administrative review by the Maryland State Board of Education,[5] as well as the right to *de novo* review in a state trial court. *Id.* at 612-13. Moreover, the court noted that public policy considerations counted in favor of quasi-judicial immunity because board members would be less likely to exercise their discretion in removal proceedings if they could be sued individually. *Id.* at 613. Such discretion is important, the court reasoned, because the board had been "entrusted . . . with this critical supervisory responsibility and because, ultimately, local school systems (and the children and families they serve) bear the brunt of any official misconduct." *Id.*

Teaching license revocation proceedings in North Carolina require the North Carolina State Board of Education to engage in functions that are sufficiently similar to those of a judge to warrant affording members of the board absolute quasi-judicial immunity. Application of the three factors gleaned from *Butz* and discussed in *Richter* and *Dyer* (both by the district court and the Fourth Circuit) necessitate this

---

[5] In Maryland, a person subject to removal proceedings by the State Board of Education can request a hearing. Then, the Maryland State Board of Education can conduct the hearing itself, or it can transfer the matter to the state Office of Administrative Hearings for hearing before an administrative law judge for either proposed or final findings of fact and conclusions of law. *Dyer*, 187 F. Supp. 3d. at 605 (citing MD. CODE ANN., STATE GOV'T § 10-205). In *Dyer*, the state Board of Education transferred the matter to an administrative law judge "to conduct an evidentiary hearing and draft a proposed decision." *Id.*

conclusion. First, the Board must apply law to facts to determine whether a teacher's license should be revoked. *See* 16 N.C. ADMIN. CODE 6C.0312(c) (Superintendent of Public Instruction shall file written charges with the State Board of Education if, after investigation, the Superintendent has reasonable cause to believe that teaching license should be revoked; and the State Board of Education "shall review the written charges and determine whether the person's license should be suspended or revoked based on the information contained in the written charges"). The Board effectively conducts an adjudicatory hearing to determine whether a teacher's license should be revoked or suspended pursuant to 16 N.C. ADMIN. CODE 6C.0312(a) (listing various bases for teaching license suspension or revocation).

Second, as evidenced by the instant matter, a decision to revoke a teacher's license is likely to engender disappointment and litigation. *Cf. Bettencourt v. Bd. of Registration in Med. of Mass.*, 904 F.2d 772, 783 (1st Cir. 1990) ("[T]he act of revoking a physician's license . . . is likely to stimulate a litigious reaction from the disappointed physician, making the need for absolute immunity apparent.").

Third, North Carolina law and regulations provide significant procedural protection in teaching license revocation proceedings. Automatic license revocations are limited to teachers who have been convicted of certain crimes. N.C. GEN. STAT. § 115C-296(d)(2). For all other revocations, the process set forth in administrative regulation 16 N.C. ADMIN. CODE 6C.0312(c) applies.

The aforementioned regulation requires that a person whose license is subject to revocation proceedings be afforded written notice of the charges and the right to

initiate a hearing before an administrative law judge pursuant to the North Carolina Administrative Procedure Act. *Id.* (cross-referencing N.C. GEN. STAT. §§ 150B-3, -34). A person dissatisfied with the final decision of an administrative law judge may seek judicial review in North Carolina Superior Court. N.C. GEN. STAT. § 150B-43. Finally, a teacher whose license has been revoked can petition for reinstatement of that license after six months. 16 N.C. ADMIN. CODE 6C.0312(f).

In sum, a North Carolina teacher whose license is subject to revocation proceedings is entitled to written notice of the charges (charges which themselves must be independently investigated by the state Superintendent of Public Instruction after a complaint has been received), the right to a hearing before the state Board of Education, the right to transfer that contested hearing to an administrative law judge for adjudication, and the right to seek judicial review in state court. These procedures are nearly identical to those analyzed in *Dyer*. The layers of administrative and judicial review afforded in teaching license revocation proceedings are sufficient to protect against unconstitutional agency action.

The North Carolina State Board of Education implements procedures in teaching license revocation proceedings that are sufficiently judicial so as to justify granting members of that Board absolute quasi-judicial immunity. Therefore, the undersigned recommends that Plaintiff's claims against the Defendant Board members in their individual capacities be dismissed.

## B. Superintendent Claims

Plaintiff has also sued June Atkinson, former Superintendent of the North Carolina Department of Public Instruction, in her individual capacity for her role in initiating the license revocation proceedings. Defendant Atkinson is entitled to absolute immunity for her actions in relation to the investigation and initiation of teaching license revocation proceedings.

In *Butz*, the Supreme Court held:

> [A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts. The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution. An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought.
>
> The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than complete.
>
> . . . .
>
> We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment. Because the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal, we hold that those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

438 U.S. at 515-16; *see also Ostrzenski*, 177 F.3d at 250-51 (applying *Butz* and holding that an individual conducting a peer review related to a doctor's medical license revocation proceeding was engaged in conduct analogous to that of a

prosecutor and thus entitled to absolute immunity); *Richter*, 21 F.3d 423, 1994 WL 118011, at *5-6 (applying *Butz* and holding that medical board staff and attorney who investigated and initiated license revocation proceedings were entitled to absolute immunity).

In North Carolina, the Superintendent of Public Instruction is required to investigate whether a teacher's license should be revoked once such a request has been submitted to the Superintendent. 16 N.C. ADMIN. CODE 6C.0312(c). If, after investigation, the Superintendent determines that "reasonable cause" exists to revoke the teacher's license based on one of the grounds enumerated in 16 N.C. ADMIN. CODE 6C.0312(a), then the Superintendent prepares and files written charges with the state Board of Education. *Id.* This is quasi-prosecutorial conduct of the type explicitly addressed by *Butz* and its progeny. Therefore, Defendant Atkinson is absolutely immune for her actions taken in relation to investigating and initiating license revocation proceedings against Plaintiff.

## V.    Supplemental Claims

Plaintiff's remaining claims all arise under state law. As Plaintiff's only federal claim to survive frivolity review is a request for injunctive relief regarding expungement of his file maintained by the North Carolina State Board of Education, the undersigned recommends that the court decline to exercise supplemental jurisdiction over the remaining state-law claims. A district court may decline to exercise supplemental jurisdiction over state-law claims if the claims would

"substantially predominate[] over the claim or claims over which the district court has original jurisdiction." *See* 28 U.S.C. § 1367(c)(2).

"Predominance is assessed through a consideration of the proof offered on the asserted claims, the scope of the issues raised, and the comprehensiveness of the remedy sought." *Boyce v. Wachovia Sec.,* No. 5:09-CV-263-FL, 2010 WL 1253744, at *5 (E.D.N.C. Feb. 17, 2010), *mem. and recommendation adopted*, No. 5:09-CV-263-FL, 2010 WL 1253737 (E.D.N.C. Mar. 29, 2010). Where, as here, the state-law claims are much broader in scope, would require proof of different facts, the remedies sought differ, and resolution would consume substantially more of the court's time, the state-law claims predominate. *See id.* at *5-6.

In determining whether to exercise jurisdiction over state-law claims, a federal district court should also give due consideration to principles of comity, convenience, fairness, and judicial economy. *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 357 (1988). Given the nature of Plaintiff's claims and considering the state court's strong interest in such matters, the undersigned recommends that the court decline jurisdiction over Plaintiff's state-law claims.

## CONCLUSION

For the reasons stated above, Plaintiff's application to proceed *in forma pauperis* is ALLOWED, and it is RECOMMENDED as follows:

1.      Plaintiff's claims against William Cobey, A.L. Collins, Dan Forest, Rebecca Taylor, Reginald Kenan, Olivia Holmes Oxendine, Gregory Alcorn, Wayne McDevitt, Patricia Willoughby, Eric Davis, Janet Cowell, Kevin Howell, and June

Atkinson, in their individual capacities, should be dismissed as these defendants are immune from suit;

2.     Plaintiff's Title VII claim should be dismissed, in its entirety, as frivolous or for failure to state a claim upon which relief can be granted;

3.     Plaintiff's §§ 1981, 1983, and 1985 claims for money damages against the North Carolina State Board of Education and William Cobey, A.L. Collins, Dan Forest, Rebecca Taylor, Reginald Kenan, Olivia Holmes Oxendine, Gregory Alcorn, Wayne McDevitt, Patricia Willoughby, Eric Davis, Dale Folwell, Amy White, and Mark Johnson, in their official capacities, should be dismissed for lack of subject matter jurisdiction;

4.     Plaintiff's § 1983 claim for injunctive relief against the North Carolina State Board of Education should be allowed to proceed as this claim is neither legally frivolous nor factually baseless; and

5.     The court should decline to exercise supplemental jurisdiction over Plaintiff's remaining state-law claims.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on Plaintiff.  Plaintiff is hereby advised as follows:

You shall have until **May 24, 2017,** to file written objections to the Memorandum and Recommendation.  The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and

Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.,* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C.

If you do not file written objections to the Memorandum and Recommendation by the foregoing deadline, you will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, your failure to file written objections by the foregoing deadline may bar you from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846-47 (4th Cir. 1985).

This 10th day of May 2017.

KIMBERLY A. SWANK
United States Magistrate Judge